**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| GONZALES & GONZALES BONDS & INSURANCE AGENCY, INC.; TOPPER BROKERAGE, INC.; LEXINGTON NATIONAL INSURANCE CORPORATION; AMERICAN SURETY COMPANY; ALLEGHENY CASUALTY COMPANY, | No. 22-16552<br><br>D.C. No.<br>4:20-cv-08897-KAW |
| *Plaintiffs-Appellees*, | |
| v. | OPINION |
| U.S. DEPARTMENT OF HOMELAND SECURITY; CHAD F. WOLF, Under the title of Acting Secretary of Homeland Security; UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES; KENNETH T. CUCCINELLI, Under the title of Senior Official Performing the Duties of the Deputy Secretary of Homeland Security, | |
| *Defendants-Appellants*. | |

Appeal from the United States District Court
for the Northern District of California
Kandis A. Westmore, Magistrate Judge, Presiding

Argued and Submitted October 19, 2023
San Francisco, California

Filed July 18, 2024

Before: Carlos T. Bea, Morgan Christen, and Anthony D.
Johnstone, Circuit Judges.

Opinion by Judge Bea;
Concurrence by Judge Johnstone;
Dissent by Judge Christen

## SUMMARY[*]

### Federal Vacancies Reform Act

In an action in which companies that post immigration
surety bonds challenged a Department of Homeland Security
("DHS") rule on the ground that the Acting Secretary of
DHS who promulgated the rule was not duly appointed, the
panel reversed the district court's summary judgment in
favor of Plaintiffs and remanded.

An immigration bond secures a promise that an alien will
appear for immigration proceedings. In 2020, Acting

---

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

Secretary Chad Wolf promulgated a rule permitting DHS to refuse business from certain surety firms (the "Rule"). But, as the panel explained, Wolf was not duly appointed under the applicable law and thus lacked authority to promulgate the Rule. In 2021, Secretary of Homeland Security Alejandro Mayorkas, who was duly appointed, ratified the Rule.

The panel held that the Federal Vacancies Reform Act of 1998 ("FVRA") did not bar Mayorkas from ratifying the Rule, and that ratification cured any defects in the Rule's promulgation. The panel explained that the Ratification Bar, 5 U.S.C. § 3348(d)(2), prohibits ratification of certain actions taken by a purported officer serving in violation of the FVRA. The panel concluded that the Ratification Bar applies only to "functions or duties" that are "nondelegable." By the statute's own definition, the Ratification Bar applies only to nondelegable functions or duties because only nondelegable functions or duties are "required by statute [or regulation] to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2).

Judge Johnstone concurred in the lead opinion except for its conclusion that the meaning of the phrase "the applicable officer (and only that officer)" is plain. Looking to extrinsic evidence from the court's co-equal branches to resolve this ambiguity, Judge Johnstone nonetheless concluded that "function or duty" includes only the officer's nondelegable duties.

Dissenting, Judge Christen wrote that the text, structure, and purpose of the FVRA make clear that application of the ratification bar does not turn on whether a duty is delegable. Rather, the ratification bar applies to all functions

and duties that Congress assigns to a single officer (and excludes functions and duties that Congress authorizes more than one officer to perform). Judge Christen wrote that the majority's decision renders the FVRA a near-dead letter by deciding that the FVRA does not apply to the vast majority of actions taken by officials serving in violation of the FVRA.

---

## COUNSEL

Joseph C. Gjonola, (argued), Gary A. Nye, and David R. Ginsburg, Roxborough Pomerance Nye & Adreani LLP, Woodland Hills, California; for Plaintiffs-Appellees.

Anna O. Mohan (argued) and Melissa N. Patterson, Appellate Staff Attorneys; Stephanie Hinds, United States Attorney; Brian M. Boynton, Principal Deputy Assistant Attorney General; Civil Division, United States Department of Justice, Washington, D.C.; James C. Luh, Assistant United States Attorney, United States Department of Justice, Washington, D.C.; for Defendants-Appellants.

Brian R. Frazelle (argued), Brianne J. Gorod, and Elizabeth B. Wydra, Constitutional Accountability Center, Washington, D.C., for Amicus Curiae Constitutional Accountability Center.

## OPINION

BEA, Circuit Judge:

In certain immigration cases, the Department of Homeland Security ("DHS") requires a bond—similar to a bail bond in criminal cases—to avoid detention of the alien pending deportation. The bond secures a promise that the alien will appear for immigration proceedings, which will determine whether the alien can remain in the United States. Commercial firms, known as sureties, provide such bonds. In 2020, the "Acting Secretary" of the DHS promulgated a rule that permitted the agency to refuse business from certain surety firms that were serially delinquent in making payments for absconding aliens or that had garnered a reputation for posting bonds for frequent absconders. *See* Procedures and Standards for Declining Surety Immigration Bonds and Administrative Appeal Requirement for Breaches, 85 Fed. Reg. 45968, 45968–69 (July 31, 2020) (the "Rule").

But some of those sureties that were not too fond of this new Rule, which cut into their business, realized that the "Acting Secretary" who promulgated the Rule may not have been duly appointed. Hence, the Rule might be invalid and the sureties might have been improperly banned from doing business with the DHS.

Unfortunately for the sureties' pretensions, in 2021 Secretary of Homeland Security Alejandro Mayorkas, who was duly appointed, ratified the Rule. But that leaves the question—does the exercise of ratification cure the alleged defect in the Rule's promulgation? We hold that it does. Under principles of agency law and Circuit precedent, Secretary Mayorkas had the authority to ratify an action

taken by an improperly appointed Acting Secretary, who would not otherwise have been authorized to take that action. *See Consumer Fin. Prot. Bureau v. Gordon*, 819 F.3d 1179, 1190–92 (9th Cir. 2016). But there was a possible hurdle to the exercise of ratification. Under the so-called "Ratification Bar," Secretary Mayorkas could not ratify promulgation of the Rule if such promulgation could be performed only by the Secretary of Homeland Security himself. *See* 5 U.S.C. § 3348(a)(2), (d)(2).

We conclude that the Secretary had the authority to delegate promulgation of the Rule; it was not a function or duty singularly entrusted to the Secretary. *See* 6 U.S.C. § 112(b)(1). Because the Secretary could have delegated promulgation of the Rule, Secretary Mayorkas could ratify the 2020 promulgation of the Rule, regardless whether the Rule's promulgation had been actually delegated. Thus, ratification of the Rule by Secretary Mayorkas cured any defect in the Rule's promulgation.

The question in this case is whether 5 U.S.C. § 3348(d)(2), the Ratification Bar, which prohibits ratification of certain actions taken by a purported officer serving in violation of the Federal Vacancies Reform Act of 1998 ("FVRA"), applies only to "functions or duties" that are singularly entrusted by statute or regulation to that officer, and in other words are "nondelegable." We hold that it does. By the statute's own definition,[1] § 3348(d)'s Ratification Bar applies only to nondelegable functions or duties because only nondelegable functions or duties are "required by statute [or regulation] to be performed by the applicable officer (and only that officer)." 5 U.S.C.

---

[1] Judge Johnstone concurs in this opinion, except for its conclusion that the meaning of the statute is plain and unambiguous. Con. Op. 33–34.

§ 3348(a)(2).  Thus, we hold that the district court erred in granting Plaintiffs' motion for summary judgment because the FVRA did not bar Secretary Mayorkas from ratifying the Rule, and that ratification cured any defects in the Rule's 2020 promulgation.

## I.  BACKGROUND

Article II of the Constitution gives the President the authority to appoint "Officers of the United States," but requires the President to obtain the "Advice and Consent of the Senate" to make those appointments effective.  U.S. CONST. art. II, § 2, cl. 2.  To avoid negative repercussions of vacancies in those positions, "Congress has long accounted for th[e] reality" of vacancies "by authorizing the President to direct certain officials to temporarily carry out the duties of a vacant . . . office in an acting capacity, without Senate confirmation."  *NLRB v. SW Gen., Inc.*, 580 U.S. 288, 293 (2017).  The current version of that authorization is the FVRA, 5 U.S.C. §§ 3345–49e.

Under the FVRA, when an Executive agency officer "whose appointment to office is required to be made by the President, by and with the advice and consent of the Senate, dies, resigns, or is otherwise unable to perform the functions and duties of the office[,] the first assistant to the office of such officer shall perform the functions and duties of the office temporarily in an acting capacity," 5 U.S.C. § 3345(a)(1), unless the President selects either another officer who was previously Presidentially appointed and Senate-confirmed or an officer or employee of the same agency who has served a specified time in that agency, *id.* § 3345(a)(2)–(3).

The FVRA is the "exclusive means for temporarily authorizing an acting official to perform the functions and

duties of any office of an Executive agency . . . for which appointment is required to be made by the President, by and with the advice and consent of the Senate, unless a statutory provision expressly authorizes the President, a court, or the head of an Executive department" to designate the acting officer, a statute designates the acting officer, or the President makes an appointment during a Senate recess. *Id.* § 3347(a).

In December 2016, President Obama exercised his authority under § 3345(a) to establish an order of succession for the Office of Secretary of Homeland Security in case of an office vacancy. Exec. Order No. 13753, 81 Fed. Reg. 90667 (Dec. 9, 2016) ("Executive Order 13753"). Later that month, Congress amended the Homeland Security Act to give the Secretary of Homeland Security independent authority to create an order of succession, but did not change the order of succession established by President Obama's Executive Order 13753. National Defense Authorization Act for Fiscal Year 2017, Pub. L. No. 114-328, § 1903, 130 Stat. 2000, 2672 (2016) (codified at 6 U.S.C. § 113(g)). President Obama signed the Act, and it became law.

### A. Chad Wolf's Ascension to "Acting Secretary" of the DHS

In April 2019, Kirsjten Nielsen, on her last day of service as Secretary of Homeland Security, modified an order titled "DHS Orders of Succession and Delegations of Authority for Named Positions," also known as Delegation 00106. Delegation 00106, both before and as amended, provided in subparts II.A–B:

> A. In case of the Secretary's death, resignation, or inability to perform the

> functions of the Office, the orderly
> succession of officials is governed by
> Executive Order 13753, amended on
> December 9, 2016.
>
> B. I hereby delegate to the officials
> occupying the identified positions in the
> order listed (Annex A), my authority to
> exercise the powers and perform the
> functions and duties of my office, to the
> extent not otherwise prohibited by law, in
> the event I am unavailable to act *during a
> disaster or catastrophic emergency*.

(emphasis added).   In a document titled "Amending the
Order of Succession in the Department of Homeland
Security," Secretary Nielsen invoked her authority under 6
U.S.C. § 113(g)(2), and "designate[d] the order of
succession for the Secretary of Homeland Security as
follow[ed]."   What followed were instructions to strike
Annex A and replace it with a new list, still titled "Annex A.
Order for Delegation of Authority by the Secretary of the
Department of Homeland Security."   Notably, Secretary
Nielsen did not change the text of Delegation 00106,
subpart II.A; so, Annex A, both before and after Secretary
Nielsen's order, applied only to delegations occurring
"during a disaster or catastrophic emergency."   As a result,
absent a delegation during a disaster or catastrophic
emergency, subpart II.A, "the orderly succession of
officials" to the Secretary's office, was still "governed by
Executive Order 13753."

    As of Secretary Nielsen's last day in office, the list of
names in Secretary Nielsen's Annex A and Executive Order
13753 differed.   Annex A listed (1) the Deputy Secretary of

Homeland Security, (2) the Under Secretary for Management, (3) the Commissioner of Customs and Border Protection ("CBP"), and (4) the Administrator of the Federal Emergency Management Agency ("FEMA"), in that order. In contrast, Executive Order 13753's order of succession began with the same first two positions as Annex A, (1) the Deputy Secretary of Homeland Security and (2) the Under Secretary for Management, but then it listed (3) the Administrator of FEMA (rather than the Commissioner of CBP) followed by (4) the Under Secretary for National Protection and Programs ("NPP"), renamed the Director of the Cybersecurity and Infrastructure Security Agency ("CISA") (rather than the Administrator of FEMA).[2] 81 Fed. Reg. at 90667.

When Secretary Nielsen resigned the next day, the offices of Deputy Secretary of Homeland Security and Under Secretary for Management were both vacant, so the Commissioner of CBP, Kevin McAleenan, became "Acting Secretary," apparently relying on Secretary Nielsen's amendments to Annex A. No one disputes that there was no applicable "disaster or catastrophic emergency" on that day. So, under the operative orders—Delegation 00106, subpart II.A, and Executive Order 13753—and because the FEMA Administrator office was also vacant, the Director of the CISA, Christopher Krebs, should have assumed the role of Acting Secretary, rather than McAleenan. However, Krebs

---

[2] The NPP was renamed CISA in November 2018. Cybersecurity and Infrastructure Security Agency Act of 2018, Pub. L. No. 115-278, § 2202, 132 Stat. 4168, 4169 (2018) (codified at 6 U.S.C. § 652). The position Under Secretary for the NPP refers to the Director of the CISA. 6 U.S.C. § 652(b)(3).

did not do so; instead, McAleenan assumed the role.  Thus, McAleenan was not a duly appointed Acting Secretary.

Nonetheless, in November 2019, McAleenan amended Delegation 00106, changing subpart II.A to reference Annex A instead of Executive Order 13753.  McAleenan also amended Annex A, replacing the fourth position with the Under Secretary for Strategy, Policy, and Plans.  Soon thereafter, McAleenan resigned, and because the first three positions of Annex A were vacant, the Under Secretary for Strategy, Policy, and Plans—Chad Wolf—became "Acting Secretary" pursuant to McAleenan's purported order of succession, rather than the Director of the CISA, Christopher Krebs, as would have ensued under Executive Order 13753.  No one disputes that there was no applicable "disaster or catastrophic emergency" on that day either.  Hence, Wolf was no more duly appointed than had been McAleenan.

## B. "Acting Secretary" Wolf's Promulgation of the Rule

As noted, the DHS has a policy of releasing aliens from custody while removal proceedings are pending if they post an immigration bond, a guarantee that the alien will appear upon government request for future proceedings or otherwise cooperate with Immigration and Customs Enforcement ("ICE") officials.  *See* 85 Fed. Reg. at 45968–69.  One type of bond is a surety bond, which is guaranteed by companies certified by the Department of Treasury to underwrite federal bonds.  *Id.* at 45969.  If an alien fails to appear to removal proceedings, the DHS can determine whether the bond has been breached, and if so, require the surety to pay the bond amount to the government.  *Id.* at 45969.  But the sureties do not always pay, and the DHS

asserts this has deprived the DHS of millions of dollars. *See id.* at 45970.

To address this concern, Wolf promulgated the Rule in July 2020 while purportedly serving as "Acting Secretary." *See id.* at 45968. The Rule delegated to ICE the discretion to reject surety bonds from companies with outstanding balances owed and unpaid to the DHS or with high breach rates, and further required administrative exhaustion, filings and procedures within DHS by sureties wishing to challenge DHS bond-breach decisions, prior to the sureties seeking relief by filing actions in court. *See id.* at 45971–73.

## C. Procedural History and Ratification of the Rule

In December 2020, five companies engaged in the business of posting immigration surety bonds with the DHS ("Plaintiffs") sued the DHS, ICE, Wolf, and Kenneth Cuccinelli, under the title of Senior Official Performing the Duties of the Deputy Secretary of Homeland Security (collectively, "the government") in the United States District Court for the Northern District of California, claiming that the Rule should be set aside under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–06.[3]  Plaintiffs argued the Rule had not been properly promulgated because Wolf was not properly serving as Acting Secretary of DHS when he purported to promulgate the Rule.

However, in April 2021, Secretary Alejandro Mayorkas, who no one disputes was properly appointed by President Biden and confirmed by the Senate, ratified the Rule, stating that he had "full knowledge" of the Rule and believed ratification was "consistent with the Department's

---

[3] The parties consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636.

authorities." In August 2021, Plaintiffs amended their complaint to state that Secretary Mayorkas did not have the authority to ratify Wolf's promulgation of the Rule, but the government nonetheless moved to dismiss the amended complaint under Federal Rule of Civil Procedure 12(b)(6). In denying the government's motion to dismiss the amended complaint, the district court held that Wolf had never lawfully held the title of "Acting Secretary" and that Secretary Mayorkas's ratification of the Rule was barred by "the FVRA's plain and unambiguous language," the Ratification Bar.

In May 2022, Plaintiffs moved for summary judgment on the issue whether the "Rule was lawfully promulgated." The district court granted Plaintiffs' motion predominantly for the same reasons it had earlier denied the government's 12(b)(6) motion to dismiss the amended complaint. On the question whether Wolf was validly appointed as Acting Secretary, the district court found that Secretary Nielsen failed properly to amend the order of succession, rendering McAleenan's and Wolf's purported ascension to Acting Secretary invalid and their service improper. On the question whether Secretary Mayorkas's ratification cured the defect, the district court echoed its previous order and held that the FVRA barred ratification of the improperly promulgated Rule. The district court granted Plaintiffs' motion for summary judgment and vacated the Rule. The Plaintiff sureties were back in business. But the government timely appealed.

## II. JURISDICTION & STANDARD OF REVIEW

We have jurisdiction over this appeal under 28 U.S.C. § 1291. We review the district court's grant of summary

judgment de novo. *Desire, LLC v. Manna Textiles, Inc.*, 986 F.3d 1253, 1259 (9th Cir. 2021).

## III. DISCUSSION

### A. DHS Order of Succession

On Secretary Nielsen's last day serving as Secretary of Homeland Security, she failed to amend Delegation 00106, subpart II.A—the order of succession to her office "[i]n case of the Secretary's death, resignation, or inability to perform the functions of the Office." Instead, she amended Annex A—the order of delegation in the event she was "unavailable to act during a disaster or catastrophic emergency" pursuant to Delegation 00106, subpart II.B. Hence, her amended order of delegation could be effective only during a "disaster or catastrophic emergency." The parties do not dispute that neither McAleenan's nor Wolf's succession to the secretaryship of DHS occurred during such events. Despite the plain language of the order, the government has argued—and at least seven times failed to persuade district courts—that Secretary Nielsen's error should be excused. *See Asylumworks v. Mayorkas*, 590 F. Supp. 3d 11, 20–21 (D.D.C. 2022); *Behring Reg'l Ctr. LLC v. Wolf*, 544 F. Supp. 3d 937, 943–44 (N.D. Cal. 2021); *Chamber of Com. of U.S. v. U.S. Dep't of Homeland Sec.*, No. 20-cv-07331-JSW, 2021 WL 4198518, at *4–5 (N.D. Cal. Sept. 15, 2021); *Pangea Legal Servs. v. U.S. Dep't of Homeland Sec.*, 512 F. Supp. 3d 966, 974–75 (N.D. Cal. 2021); *La Clínica de la Raza v. Trump*, No. 19-cv-04980-PJH, 2020 WL 7053313, at *6–7 (N.D. Cal. Nov. 25, 2020); *Batalla Vidal v. Wolf*, 501 F. Supp. 3d 117, 131–32 (E.D.N.Y. 2020); *Casa de Md., Inc. v. Wolf*, 486 F. Supp. 3d 928, 957–60 (D. Md. 2020).

At this point, the government's position that Secretary Nielsen's error should be excused seems, at best, untenable,

and at worst, frivolous. And though the government assured us at oral argument that the government's intentions were not "nefarious," Secretary Nielsen's best intentions did not transform the modification of Annex A into a modification of Delegation 00106, subpart II.A. As a result, McAleenan improperly assumed the role of "Acting Secretary" over Christopher Krebs, who was next in line under Executive Order 13753. Therefore, McAleenan was without authority in November 2019 to amend Delegation 00106, though his attempt demonstrated awareness that his predecessor should have amended subpart II.A to reference Annex A instead of Executive Order 13753. When McAleenan resigned, Wolf improperly assumed the role of "Acting Secretary" pursuant to McAleenan's version of Annex A instead of Executive Order 13753. Therefore, "Acting Secretary" Wolf lacked authority to promulgate the Rule. Undeterred, Wolf went on to promulgate the contested Rule.

### B. Ratification and the FVRA's Ratification Bar

This raises the question whether, despite Wolf's improper service as "Acting Secretary," any defect in the 2020 promulgation of the Rule was cured by Secretary Mayorkas's 2021 ratification of the Rule, or whether any such ratification was barred by the FVRA.

### 1. Secretary Mayorkas's authority to ratify the Rule

The Supreme Court has instructed that when one officer acts without authority, the validity of an "'after-the-fact' authorization" by another officer with authority to take the action "is at least presumptively governed by principles of agency law, and in particular the doctrine of ratification." *FEC v. NRA Pol. Victory Fund*, 513 U.S. 88, 98 (1994); *see Gordon*, 819 F.3d at 1191–92 (following this guidance and

discussing the Second and Third Restatements of Agency). "[T]he party [or principal] ratifying should be able not merely to do the act ratified at the time the act was done, but also at the time the ratification was made." *Cook v. Tullis*, 85 U.S. 332, 338 (1874); *see also* RESTATEMENT (SECOND) OF AGENCY § 84(1) (AM. L. INST. 1958). If properly ratified, then the original act is normally treated as if it had been properly performed. *See* RESTATEMENT (SECOND) OF AGENCY § 100 cmt. a.

Where an invalidly appointed person takes an action on behalf of an agency, a subsequent, valid ratification cures any deficiencies in the original appointment. *Gordon*, 819 F.3d at 1190–91. In *Gordon*, the Consumer Financial Protection Bureau ("CFPB") brought a civil enforcement action against a lawyer for violations of the Consumer Financial Protection Act based on unfair and deceptive practices. *Id.* at 1186. The lawyer challenged the prosecution on the grounds that the CFPB brought the action while being led by an improperly appointed Director. *Id.* The lawyer claimed the President had unconstitutionally appointed the Director. *Id.* President Obama had initially relied on his recess-appointment power to appoint Richard Cordray as Director. *Id.* at 1185. But after the Supreme Court rejected other similar appointments in *NLRB v. Noel Canning*, 573 U.S. 513, 518–19 (2014), President Obama "renominated" Cordray, and he was later confirmed by the Senate. *Gordon*, 819 F.3d at 1185. Cordray then ratified his previous actions, including the enforcement action against the lawyer. *Id.* at 1186. Analyzing the Second and Third Restatements of Agency, this Court held that Cordray's proper appointment and his ratification of prior acts cured any claimed appointment defects under Article II of the

Constitution. *Id.* at 1191–92 (citing RESTATEMENT (SECOND) OF AGENCY § 93(3)).

Here, we similarly find that Secretary Mayorkas, who was appointed by President Biden and confirmed by the Senate in February 2021, had the authority under agency law to ratify the Rule in April 2021. Like in *Gordon*, Secretary Mayorkas ratified Wolf's promulgation of the Rule. At all times relevant here, it is undisputed that the principal—the Secretary of Homeland Security—had the authority to "establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority." 8 U.S.C. § 1103(a)(3); *see Gordon*, 819 F.3d at 1191 ("[I]f the principal (here, CFPB) had authority to bring the action in question, then the subsequent . . . ratification . . . is sufficient."). Because the Secretary of Homeland Security had the authority to promulgate the Rule "at the time the act was done, [and] also at the time the ratification was made," Secretary Mayorkas had authority under agency law to ratify the Rule. *See Gordon*, 819 F.3d at 1191 (quoting *NRA Pol. Victory Fund*, 513 U.S. at 98) (emphasis removed); *see also Kajmowicz v. Whitaker*, 42 F.4th 138, 147 (3d Cir. 2022) ("If a lawfully appointed official ratifies his predecessor's action and does so in accordance with the law, that ratification may 'remedy a defect arising from the decision of an improperly appointed' predecessor." (quoting *Jooce v. FDA*, 981 F.3d 26, 28 (D.C. Cir. 2020))).

## 2. *The FVRA's Ratification Bar*

But not so fast. The authority to ratify is not unlimited. One limit on the ability to ratify the unauthorized actions of a purported Acting Secretary is the FVRA's Ratification

Bar—the very crux of this case. *See* 5 U.S.C. § 3348(d)(2). The parties dispute the applicability of the Ratification Bar. The subsection that contains the Ratification Bar provides that actions "taken by any person who is not acting under" the FVRA "in the performance of any *function or duty* of a vacant office . . . shall have no force or effect" and "may not be ratified." *Id.* § 3348(d) (emphasis added). Unfortunately, the district court failed to grapple with § 3348's definition of "function or duty," thus ignoring a key aspect of the statute being interpreted. *See id.* § 3348(a)(2). Because this Court has never interpreted the Ratification Bar provision of the FVRA, we do so now and join the other circuit courts in holding that the Ratification Bar embodied in § 3348(d) applies only to those duties of an officer that are nondelegable. *See Kajmowicz*, 42 F.4th at 148; *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1336 (Fed. Cir. 2022), *cert. denied*, 143 S. Ct. 2493 (2023).

We hold that promulgation of the Rule was not a nondelegable duty of the Secretary of Homeland Security. Since promulgation of the Rule could have been delegated by the Secretary to another person, and was not an action which only the Secretary could take, the Ratification Bar does not invalidate Secretary Mayorkas's ratification of Wolf's promulgation of the Rule.

As always, we "begin by analyzing the statutory language, 'assum[ing] that the ordinary meaning of that language accurately expresses the legislative purpose.'" *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 251 (2010) (alteration in original) (quoting *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009)). And where statutory language is plain and unambiguous, it must be enforced "according to its terms." *Id.*

GONZALES & GONZALES BONDS & INS. AGENCY, INC. v. USDHS 19

In prescribing the penalties for failure to comply with the FVRA, § 3348(d) provides:

**(1)** An action taken by any person who is not acting under [the FVRA] in the performance of any *function or duty* of a vacant office to which [the FVRA applies] shall have no force or effect. **(2)** An action that has no force or effect under paragraph (1) may not be ratified.

*Id.* (emphasis added). Notably, "function or duty" is a term defined in the same statute:

**(a)** In this section--

. . .

**(2)** the term "function or duty" means any function or duty of the applicable *office* that--
**(A) (i)** is established by statute; and
**(ii)** is required by statute to be performed by the applicable *officer* (*and only that officer*); or

**(B) (i)(I)** is established by regulation; and
**(II)** is required by such regulation to be performed by the applicable officer (and only that officer); and
**(ii)** includes a function or duty to which clause (i)(I) and (II) applies, and the applicable regulation is in effect at any time during the 180-day period preceding the date on which the vacancy occurs.

*Id.* § 3348(a) (emphasis added).

The plain and unambiguous language of § 3348(d)(1), and subsection (d)(2)'s Ratification Bar, applies only to "any

*function or duty* of a vacant office." § 3348(d)(1) (emphasis added). As "function or duty" is defined within § 3348 as one that is "required by statute to be performed by the applicable officer (and only that officer)," the plain language of that definition is determinative. *See Stenberg v. Carhart*, 530 U.S. 914, 942 (2000) ("When a statute includes an explicit definition, we must follow that definition . . . ."). Further, it is "a cardinal principle of statutory construction that we must '"give effect, if possible, to every clause and word of a statute."'" *Williams v. Taylor*, 529 U.S. 362, 404 (2000) (quoting *United States v. Menasche*, 348 U.S. 528, 538–39 (1955)); *see* ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 174–79 (2012) (discussing the surplusage canon).

Equipped with these guiding principles, the plain and unambiguous text and the FVRA's structure support an interpretation of "function or duty" that includes a Ratification Bar only to exclusive, or nondelegable, duties of the Secretary. We explain below why the promulgation of the Rule is not a "function or duty" which a statute or regulation requires only the Secretary to perform, but a duty which the Secretary can lawfully delegate. Thus, the Ratification Bar does not apply here.

> *a. Text*

A "function or duty" under § 3348 must be exclusive to the officer, or nondelegable, based on the plain and unambiguous meaning of the parenthetical modifier "and only that officer." 5 U.S.C. § 3348(a)(2). Though Plaintiffs correctly note that the word *nondelegable* "appears nowhere in the statute," to assign the parenthetical modifier any other interpretation would strain the plain meaning of the phrase "and only that officer." In 1998, when the FVRA was

GONZALES & GONZALES BONDS & INS. AGENCY, INC. V. USDHS 21

passed, the pertinent definition of the adverb "only" meant what it means today: "solely, exclusively." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 812 (10th ed. 1998). The plain meaning of "only that officer" means the "function or duty" must be entrusted to and *performed exclusively by that officer* and *no one other than that officer*. It does not, as the dissent suggests, merely "exclude[] instances in which Congress has directed more than one officer to perform a function or duty," each by himself or together with another officer. Diss. Op. 51–52. If a statute required a duty to be performed by "the Secretary and/or anyone of the Secretary's choosing," despite no other officer being assigned that duty, surely that duty would not constitute a "function or duty" under § 3348(a)(2), because that duty would not be "required by statute" to be performed by "only that officer." *See* 5 U.S.C. § 3348(a)(2)(A)(ii). The dissent's interpretation would negate the plain meaning of the parenthetical "and only that officer."

The plain meaning of the parenthetical "and only that officer" is further clarified by the definition's introductory language. The definition of "function or duty" refers to "the applicable office" and then "the applicable officer," but the parenthetical "only that officer" refers to the officer, not the office. *Id.* § 3348(a)(2). By "officer" Congress means "an individual who is . . . engaged in the performance of a Federal function under authority of law or an Executive act." *Id.* § 2104(a)(2). By "office" Congress means a particular set of functions or duties established by law. *See id.* § 2104(a)(3) (an officer is "subject to the supervision of an authority . . . while engaged in the performance of the duties of his office"). Functions and duties are established, or vested, in an office. *See id.* § 3348(a)(2)(A)(i). They are performed, and with proper authority may be delegated, by

an officer. *See id.* § 3348(a)(2)(A)(ii). Thus, the "only that officer" parenthetical applies to *who* performs or delegates the function or duty (the officer) instead of *where* the function or duty is established or vested (the office). Congress chose to define "function or duty" in terms of which specific officer is required to perform that duty. That choice supports an interpretation that incorporates a requirement of nondelegation for the Ratification Bar to apply.

An interpretation of "function or duty" narrower than that proposed by the dissent, and in keeping with this opinion, has been endorsed by every other circuit to decide the issue, and for sound reasons. *See Kajmowicz*, 42 F.4th at 148; *Arthrex*, 35 F.4th at 1336 ("This statutory language [of § 3348] is unambiguous: the FVRA applies only to functions and duties that a [Presidentially appointed and Senate-confirmed] officer alone is permitted by statute or regulation to perform. It does not apply to delegable functions and duties.").

In *Kajmowicz*, the Third Circuit affirmed a district court's dismissal of a suit challenging the promulgation of a rule by a purported "Acting Attorney General." *Kajmowicz*, 42 F.4th at 144. The court held that Attorney General William Barr's later ratification of the rule was not barred by the FVRA and foreclosed Kajmowicz's challenge. *Id.* at 144, 154. The court wrote that the statutory language was unambiguous and that the definition of "function or duty" does not include delegable functions and duties. *Id.* at 148–49. The court was unpersuaded by the fact that § 3348 does not contain the words "nondelegable" or "exclusive" because "Congress need not have included these terms when it already included the parenthetical qualifier 'and only that officer.'" *Id.* at 148 (quoting § 3348(a)(2)(A)(ii)). The court

also explicitly rejected the argument that "if a statute assigns a duty to a single office rather than multiple offices, then it does so exclusively." *Id.* at 149. Referencing the presumption that delegation is "permissible absent affirmative evidence of a contrary congressional intent," the court gave "effect to Congress's decision to define a 'function or duty' in terms of what the statute requires, not what it permits." *Id.* at 149–50 (quoting *La. Forestry Ass'n v. Sec'y U.S. Dep't of Lab.*, 745 F.3d 653, 671 (3d Cir. 2014)). Applying this interpretation, and acknowledging that "most statutes that confer authority will permit subdelegation," and thus permit ratification under the FVRA,[4] the court determined that Attorney General Barr's ratification of the promulgated rule was not prohibited by the FVRA and cured any defects. *Id.* at 151–52.

Here, applying the plain text of the statute, the relevant question is whether promulgation of immigration surety bond rules was a "function or duty" "established by statute" and "required by statute to be performed by" the Secretary of Homeland Security (and only the Secretary of Homeland Security). *See* 5 U.S.C. § 3348(a)(2)(A). Under 8 U.S.C.

---

[4] Judge Fisher's concurring opinion in *Kajmowicz* articulated an additional requirement to conclude an action is not a "function or duty" under § 3348: that the authority for that action not just be delegable but have been previously delegated. *Kajmowicz*, 42 F.4th at 154. This idea rests on the misconception that if the officer "has not actually delegated the authority to undertake a particular action, the statutory authority requires the action to be performed by only the [officer]." *Id.* As the majority opinion in *Kajmowicz* explained, § 3348(a)(2) is framed in terms of what a statute requires, not what it permits. *Id.* at 150. The absence of an officer exercising his authority to delegate a duty has no effect on whether a duty is "*required by statute* to be performed by the applicable officer (and only that officer)." *See* 5 U.S.C. § 3348(a)(2)(A)(ii) (emphasis added).

§ 1103(a)(3), the Secretary of Homeland Security "shall establish such regulations; prescribe such forms of bond, reports, entries, and other papers; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority." And under 6 U.S.C. § 112(b)(1), the Secretary "except as otherwise provided by this chapter, may delegate any of the Secretary's functions to any officer, employee, or organizational unit of the Department." This broad authority to delegate is reinforced by the presumption that "as far as delegation to subordinates is concerned, '[e]xpress statutory authority for delegation is not required.'" *Frankl v. HTH Corp.*, 650 F.3d 1334, 1350 (9th Cir. 2011) (alteration in original) (quoting *Loma Linda Univ. v. Schweiker*, 705 F.2d 1123, 1128 (9th Cir. 1983)). We are not aware of any law that limits the Secretary's ability to delegate promulgation of immigration surety bond rules. Because no statute required the Secretary, and only the Secretary, to promulgate immigration surety bond rules, promulgation of the Rule was delegable—and therefore not a "function or duty" within the meaning of § 3348. Hence, ratification of the Rule Wolf promulgated was not barred by the FVRA.

### b. Structure

A textual interpretation of the statute that incorporates the "nondelegable" requirement as a necessary element to bar ratification is supported by the structure of the FVRA and will not, as Plaintiffs insist, "eviscerate the FVRA's remedial scheme." Nor does a textual reading require us to view this provision in isolation or disrupt the statute's structure.

To begin, our interpretation of "function or duty" will not allow agencies to skirt the FVRA's requirements. Amicus

GONZALES & GONZALES BONDS & INS. AGENCY, INC. V. USDHS 25

Constitutional Accountability Center ("Center") posits that a requirement of nondelegation to invoke the Ratification Bar would allow agencies to "rely on their vesting-and-delegation authority to circumvent [the FVRA], knowing that their unlawful actions could not be held void under § 3348(d)(1) and, if necessary, could be ratified." Not so. First, actions of officers who are exempt from § 3348,[5] including its Ratification Bar, can still be found without legal force based on other provisions of the FVRA. *See SW Gen.*, 580 U.S. at 298–305, 309 (affirming the lower court's decision to vacate an NLRB order where the officer served in violation of § 3345, even though his office was exempt from § 3348, including the Ratification Bar). Second, the FVRA is not the only limit on agency action, and a court could "hold unlawful and set aside agency action" taken by someone without authority to act on behalf of the agency as "not in accordance with law . . . [or] in excess of statutory . . . authority." *See* 5 U.S.C. § 706(2). Third, subsequent ratification of an action taken by an improperly appointed Acting Secretary is not inevitable. The subsequent Secretary would have to exercise his lawful authority to ratify the action, an action he could take independently in his capacity as Secretary, and only if Congress had not made that earlier action nondelegable. Thus, agencies hypothetically could rely on their vesting-and-delegation authority, even if knowingly violating the FVRA, but that would neither make their actions immediately lawful nor ensure their ratification.

---

[5] Section 3348(e) provides a list of officers to whom that section, including the Ratification Bar, does not apply. The Secretary of Homeland Security is not among those officers.

As we have explained, not "every violation of the FVRA will result in the invalidation of the challenged agency action." *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 564 (9th Cir. 2016) (dismissing the NLRB's petition "for lack of proper authorization" by Acting General Counsel, even though he was exempt from § 3348). And yet, even where functions and duties performed in violation of the FVRA fall outside of the scope of § 3348, those actions are "*voidable*, not void." *Id.* (quoting *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 79 (D.C. Cir. 2015)). "Voidable" means the action may be challenged, but that the agency may raise "defenses based on harmless error or the de facto officer doctrine . . . to overcome the consequences of particular FVRA violations." *Id.* Or, as in this case, the agency may raise a ratification defense. *See Gordon*, 819 F.3d at 1191–92. Violations of the FVRA that are not void under § 3348(d) remain voidable on other grounds, subject to applicable defenses. *See, e.g.*, *L.M.-M. v. Cuccinelli*, 442 F. Supp. 3d 1, 35 (D.D.C. 2020) (rejecting prejudicial error and de facto officer defenses to invalidation). Properly construed in this context, our interpretation of § 3348, which limits the Ratification Bar's application to nondelegable duties, does not leave the FVRA toothless.

Further, interpreting the parenthetical modifier "and only that officer" to denote duties exclusive to that officer is consistent with a similar use of the same parenthetical modifier in § 3345(a). That section provides that "the President (and only the President) may direct" eligible people to serve as acting officers. *See* 5 U.S.C. § 3345(a)(2)–(3). Though § 3345 is framed in terms of what the President "may" do, and § 3348 in terms of what a statute or regulation "require[s]," in both instances the modifier "only" emphasizes the singularity or exclusivity of the action

to the person discussed, be it "only the President" or "only that officer." *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 568 (1995) ("[W]e adopt the premise that the term should be construed, if possible, to give it a consistent meaning throughout the Act. That principle follows from our duty to construe statutes, not isolated provisions."); SCALIA & GARNER, *supra*, 170–73 ("The presumption of consistent usage applies also when different sections of an act or code are at issue.").

Moreover, applying the plain meaning of "only that officer," which narrows the scope of the Ratification Bar, will not render subsection (e) of § 3348 superfluous. Subsection (e) lists officers who are exempt from § 3348, including its Ratification Bar. But Congress's choice not to exempt an officer from § 3348 while also narrowly defining which "functions and duties" are unratifiable is not irrational, even if Plaintiffs thought the distinction more significant. After all, the Ratification Bar is a severe restriction. Similarly, whether an action is a "function or duty" under § 3348, the only section this definition applies to, is a question a court need not address if the officer is listed in § 3348(e). An officer's absence from § 3348(e), however, does not mean that any action taken in violation of the FVRA is necessarily subject to § 3348(d). The inquiry whether an action constitutes a "function or duty" under § 3348 is distinct, meaning our interpretation in no way renders § 3348(e) surplusage.

Next, interpreting "function or duty" in § 3348 to include only nondelegable duties does not alter § 3347(b)'s dictate regarding general vesting-and-delegation statutes. Subsection 3347(a)(1) provides that the FVRA is the exclusive means for appointing Acting officials "unless a statutory provision expressly authorizes the President, a

court, or the head of an Executive department" to designate the acting officer, or a separate statute designates the acting officer. Section 3347(b) provides, "Any statutory provision providing general authority to the head of an Executive agency . . . to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency, is not a statutory provision to which subsection (a)(1) applies." Therefore, § 3347(b) clarifies that general vesting-and-delegation statutes are not sufficient to authorize the department to choose the acting officer under the FVRA, but this does not impact the meaning of "function or duty" in § 3348.[6] *See Arthrex*, 35 F.4th at 1338. That a department head cannot rely on a general vesting-and-delegation statute to designate the acting officer in the event of a vacancy, § 3347(b), answers a question wholly distinct from the consequences of violations of the FVRA under § 3348.[7] Our interpretation

---

[6] The distinction between § 3347 and § 3348 is further supported by the phrase "In this section," which introduces the definition of "function or duty" in § 3348(a)(2). As we have recognized, "'[t]hroughout the FVRA, the Congress was precise in its use of internal cross-references,' using the term 'subsection' or 'paragraph' when it meant to refer to something less than a whole section." *Hooks*, 816 F.3d at 559 (alteration in original) (quoting *SW Gen.*, 796 F.3d at 74 (D.C. Cir. 2015)). Though § 3347 provides context as to the FVRA's structure, it is less instructive than the dissent posits for interpreting the definition of "function or duty" applicable in § 3348, the section to which the definition applies.

[7] In fact, § 3347(b) addresses a specific past practice of the executive branch. Until Congress enacted the FVRA, the Department of Justice maintained that its general "vesting-and-delegation authority . . . permit[ted] the Attorney General to reassign the duties of such Senate-confirmed positions to other officials of the Department, outside the limits of the Vacancies Act." The Vacancies Act, 22 Op. O.L.C. 44, 45 (1998). The general delegation exclusion in § 3347(b) addresses this

does not "place[] §§ 3347(b) and 3348(d) at odds." Diss. Op. 55. Rather, it recognizes that who is authorized to act and the various consequences of an unauthorized person's actions are not necessarily congruent, and that Congress was aware of this when it drafted the FVRA.**[8]**

Lastly, the Center incorrectly argues that "[m]any duties that are established by regulation are delegations," so the definition of "function or duty" under § 3348(a)(2)(A) must include delegable duties. This conclusion is wrong. Section 3348(a)(2)(B) uses similar language as § 3348(a)(2)(A) but defines "function or duty" in terms of those "required by . . . *regulation* to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2)(B)(i)(II) (emphasis added). What logically follows from the structure of § 3348(a)(2) is that even if a statute does not make a duty nondelegable, an agency can tie its own hands by doing so in a regulation. *See Stand Up for Cal.! v. U.S. Dep't of the Interior*, 994 F.3d 616, 622 (D.C. Cir. 2021) ("Appellants do not argue that any statute vests exclusive authority with the Secretary or the [Assistant Secretary], and we are unaware of any such statute. We must

---

specific problem of agencies evading the requirements for *designating* acting officers.

[8] The dissent tries to have it both ways, at once arguing that we read the parenthetical in isolation, but also faulting us for recognizing that our interpretation will not frustrate the FVRA's statutory scheme. Diss. Op. 52, 57. Though the dissent argues that "[w]hether other statutes [such as the APA] may provide means of redress" to enforce the FVRA "says nothing about the correct interpretation of the FVRA," we disagree. Diss. Op. 57. First, this case was brought under the APA, so consideration of that statute in conjunction with the FVRA is, at a minimum, "our task." Diss. Op. 57. Second, that our interpretation accounts for a variety of consequences for violations of the FVRA is both supported by the plain text and sensible.

therefore determine whether the Department itself has cabined this authority."). The Center reasons that if some duties established by regulation are "functions and duties" under § 3348, and "many" duties established by regulation are delegations, then some "functions and duties" under § 3348(a)(2)(A) must be delegable. But this is a faulty syllogism, as an action that is delegable under the statutory scheme, and therefore not a "function or duty" under § 3348(a)(2)(A), could be made nondelegable by regulation, and satisfy and give independent meaning to § 3348(a)(2)(B). The practice of delegating duties by regulation does not justify interpreting "and only that officer" out of the statute Congress enacted.

If a statute's provision "has a plain meaning or is unambiguous, the statutory interpretation inquiry ends there." *CVS Health Corp. v. Vividus, LLC*, 878 F.3d 703, 706 (9th Cir. 2017). Plaintiffs and the Center rely on *SW General* and the Supreme Court's explanation of the FVRA's development and statutory scheme for the proposition that, because Congress passed the FVRA in response to a perceived threat to the Senate's power, § 3348's enforcement mechanism must have broad applicability. *See SW Gen.*, 580 U.S. at 293–96. To be sure, the Court in *SW General* said that "[t]he FVRA ensures compliance by providing that, in general, 'any function or duty of a vacant office' performed by a person not properly serving under the statute 'shall have no force or effect.'" *SW Gen.*, 580 U.S. at 296 (quoting § 3348(d)). But the Court did not go on to interpret "function or duty" under § 3348 because the Court's analysis focused on § 3345 in holding that § 3345(b)(1) applies not only to first assistants who assume their acting duties under § 3345(a)(1), but to "anyone performing acting service under the FVRA." *See*

*id.* at 299–308. Thus, the Court's explanation of § 3348(d)'s enforcement mechanism in general does not require the broader interpretation of "function or duty" Plaintiffs seek.

Even had the Court in *SW General* reached the issue of interpreting "function or duty" under § 3348, the interpretation would not have been determinative because the officer at issue was the General Counsel of the NLRB, who is exempt from § 3348. *See* 5 U.S.C. § 3348(e); *SW Gen.*, 580 U.S. at 297–98. And the Court's affirmance of the lower court's decision to vacate an NLRB order because the General Counsel served in violation of § 3345(b)(1) further illustrates how our interpretation of § 3348 does not leave the FVRA without force.**[9]** *See SW Gen.*, 580 U.S. at 297–99, 309.

Lastly, even assuming various department heads can delegate virtually all of their functions or duties, this does not change Congress's authority under the current statutory scheme to alter the scope of those delegations, as it has done before. *See* 6 U.S.C. § 624(c)(2) ("The Secretary may not delegate the authority under paragraph (1) [regarding certain emergency orders] to any official other than the Director of the Cybersecurity and Infrastructure Security Agency."); 31 U.S.C. § 1344(d)(3) ("The authority to make

---

[9] We recognize the Supreme Court did not reach the issue whether § 3348(e)(1) renders the actions of an improperly serving Acting NLRB General Counsel voidable because the NLRB did not seek certiorari on that issue. *See SW Gen.*, 580 U.S. at 298 n.2. But the Supreme Court affirmed the D.C. Circuit's decision vacating an NLRB order because the acting general counsel of the NLRB violated § 3345(b)(1) by continuing to serve in that role after being nominated to fill the position in a permanent capacity. *Id.* at 309. Thus, the Acting General Counsel's order was vacated for violating the FVRA without reliance on § 3348. Our interpretation in no way misreads *SW General*. *See* Diss. Op. 57.

designations . . . and to make determinations pursuant to
[various subsections] may not be delegated . . . ."); 54
U.S.C. § 306114 ("The head of the agency may not delegate
the responsibility to document a decision pursuant to this
section."). To be sure, the Secretary's authority to delegate
under 6 U.S.C. § 112(b)(1) is broad, and other department
heads have similarly broad authority to delegate. *See L.M.-
M.*, 442 F. Supp. 3d at 31 n.11 (listing other cabinet-level
departments with similar vesting-and-delegation statutes,
including the Departments of Defense, Education, State,
Justice, Treasury, Veterans Affairs, Housing and Urban
Development, Energy, Interior, Transportation, Commerce,
Labor, Agriculture, and Health and Human Services). But
concerns regarding the current ability of department heads
to delegate authority do not sound in statutory interpretation;
rather, they are concerns of "undesirable policy
consequences." *Bostock v. Clayton Cnty.*, 590 U.S. 644, 680
(2020). We cannot concern ourselves with policy
consequences. "The place to make new legislation, or
address unwanted consequences of old legislation, lies in
Congress." *Id.* at 680–81.

Regardless, our interpretation does not leave the FVRA
without force. Instead, our interpretation complies with the
text of the statute Congress crafted to limit the scope of one
of the statute's most severe restrictions. Because the plain
text of the FVRA unambiguously requires an interpretation
of "function or duty" encompassing only nondelegable
duties, and promulgation of the contested Rule was a task
delegable by the Secretary, the FVRA did not bar Secretary
Mayorkas's ratification of the Rule.

### IV. CONCLUSION

For the reasons stated above, we reverse the district court's order, which granted Plaintiffs' motion for summary judgment and which vacated the Rule, and we remand for further proceedings.

### REVERSED AND REMANDED.

Johnstone, J., concurring:

When a purported acting officer serves in violation of the Federal Vacancies Reform Act of 1998, an action taken by that officer in the performance of "any function or duty" of the vacant office may be challenged. 5 U.S.C. § 3348(a)(2). Subsection 3348(d)(2) provides one especially potent remedy: it voids, and prohibits ratification of, the action. But Congress limited the application of this ratification bar to the performance of a "function or duty" that "is required . . . to be performed by the applicable officer (and only that officer)." 5 U.S.C. § 3348(a)(2)(A)(ii), (B)(i)(II).

I agree with the lead opinion's analysis of the FVRA's text and structure. But our analysis cannot stop there because, even after considering text and structure, the phrase "the applicable officer (and only that officer)" is ambiguous. So we must look to extrinsic evidence from our co-equal branches to determine its meaning. The best evidence of the FVRA's history and practice resolves this ambiguity: the defined "function or duty" includes only the officer's nondelegable duties. Therefore, § 3348(d)(2) did not prohibit the Secretary of Homeland Security's ratification of the surety bonds rule. Accordingly, except for its conclusion

that the meaning of the statute is plain, I concur in the lead opinion.

## I. The FVRA's definition of "function or duty" is ambiguous.

To determine the scope of the ratification bar we must ask: what is a function or duty "required by statute to be performed by the applicable officer (and only that officer)"? 5 U.S.C. § 3348(a)(2)(A)(ii). One answer: a function or duty "is required . . . to be performed by the applicable officer (and only that officer)" when it cannot be delegated to anyone else. Few functions and duties of federal offices are nondelegable, so this reading gives a narrow scope to the actions subject to § 3348(d). The lead opinion concludes that the FVRA's text unambiguously requires this narrower interpretation. At least two other courts agree. *Kajmowicz v. Whitaker*, 42 F.4th 138, 148–50 (3d Cir. 2022); *Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1335–38 (Fed. Cir. 2022).

Other courts that find the same language unambiguous, however, come up with a different answer: a function or duty "is required . . . to be performed by the applicable officer (and only that officer)" when only a single officer is vested with the function or duty. *Asylumworks v. Mayorkas*, 590 F. Supp. 3d 11, 22–25 (D.D.C. 2022); *Behring Reg'l Ctr. v. Wolf*, 544 F. Supp. 3d 937, 945–47 (N.D. Cal. 2021). Most functions and duties of federal offices are vested in single officers, so this reading gives a broad scope to the actions subject to § 3348(d). The dissent concludes that the FVRA's purpose requires this broader interpretation.

Whether this language is ambiguous matters because when the text is clear, we do not look to outside evidence to interpret it. *See NLRB v. SW Gen., Inc.*, 580 U.S. 288, 305

(2017); *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1128 (9th Cir. 2015) (en banc). But whether a statute is ambiguous can be a difficult question. Reasonable people, including judges, often disagree about a text's ambiguity. *See* Ward Farnsworth et al., *Ambiguity About Ambiguity: An Empirical Inquiry into Legal Interpretation*, 2 J. Legal Analysis 257, 276 (2010); *see also* Brett M. Kavanaugh, *Fixing Statutory Interpretation,* 129 Harv. L. Rev. 2118, 2134–44 (2016) (reviewing Robert A. Katzmann, *Judging Statutes* (2014)). "[T]here is no errorless test for identifying or recognizing 'plain' or 'unambiguous' language." *United States v. Turkette*, 452 U.S. 576, 580 (1981).

Wherever the line between plain meaning and ambiguity lies, in my view the text at issue falls on the side of ambiguity. The linguistic meaning of the phrase "and only that officer" does not resolve that proposition's legal meaning in the context of the FVRA. Despite the invocation of competing definitions by the lead opinion and dissent, dictionaries fortify neither interpretation from doubt. *Cf. Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945) (L. Hand, J.) (warning "not to make a fortress out of the dictionary"), *aff'd*, 326 U.S. 404 (1945). And the phrase "and only that officer" appears to be unprecedented in federal law, so there are no established usages to draw upon elsewhere in the United States Code. *Cf.* Antonin Scalia & Brian A. Garner, *Reading Law: The Interpretation of Legal Texts* 167–68 (2012) (explaining the whole-text canon). Those terms do not obviously describe nondelegable duties. Congress could have simply referred to delegation by name in § 3348, but it did not. Elsewhere, Congress used delegation only to broaden, not narrow, the FVRA's reach. *See* 5 U.S.C. § 3347(b). It is no surprise that our fellow

federal courts have diverged in their interpretations of this statute. So while I agree that the lead opinion's narrower reading of the statute's text and structure is more likely than the alternative, it is not sufficiently clear to dismiss the dissent's broader reading of the FVRA's purpose.

## II. Legislative history supports the narrower reading.

When a statute's meaning is not plain, we may consider its legislative history. *See Silvers v. Sony Pictures Ent., Inc.*, 402 F.3d 881, 885–86 (9th Cir. 2005) (en banc); *e.g.*, *Delaware v. Pennsylvania*, 598 U.S. 115, 138–39 (2023) (relying in part on a Senate Report to construe the limiting parenthetical "(other than a third party bank check)" in 12 U.S.C. § 2503). When we use legislative history to understand linguistic usage of words in a statute, rather than the drafters' intent or the law's purpose, it is just as probative as any dictionary. *See* Scalia & Garner, *supra*, at 388. Thus, in our search for a statute's meaning, legislative history may "supply[] a well-informed, contemporaneous account of the relevant background to the enactment." John F. Manning, *Textualism as a Nondelegation Doctrine*, 97 Colum. L. Rev. 673, 732 (1997). This is because "[c]larity depends on context, which legislative history may illuminate," bearing in mind that "the search is not for the contents of the authors' heads but for the rules of language they used." *In re Sinclair*, 870 F.2d 1340, 1342 (7th Cir. 1989) (Easterbrook, J.). We also must not misuse legislative history to establish overriding legislative purposes that were not enacted in statutory text. "Extrinsic materials have a role in statutory interpretation only to the extent they shed a reliable light on the enacting Legislature's understanding of otherwise ambiguous terms." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).

The FVRA's primary legislative history is a Senate Report on an earlier version of the bill. *See generally* S. Rep. No. 105-250 (1998) (discussing the materially identical FVRA bill later enacted as part of an omnibus appropriations act). Committee reports, "which presumably are well considered and carefully prepared," are generally more reliable than other Congressional materials that trouble skeptics of legislative history. *Schwegmann Bros. v. Calvert Corp.*, 341 U.S. 384, 395 (1951) (Jackson, J., concurring) ("Resort to legislative history is only justified where the face of the Act is inescapably ambiguous, and then I think we should not go beyond Committee reports."). And while "legislative history is itself often murky, ambiguous, and contradictory," *Exxon Mobil Corp.*, 545 U.S. at 568, this Senate Report speaks clearly and consistently to § 3348 and the text at issue.

The FVRA's legislative history is particularly probative of its meaning because members of Congress are more than the authors of the statute; in the case of the Senate they are also a central audience for it. This confluence narrows any gap between linguistic conventions of the regulators and the regulated, lessening any potential notice concerns. *See* Amy Coney Barrett, *Congressional Insiders and Outsiders*, 84 U. Chi. L. Rev. 2193, 2202 (2017). Especially where the text is technical and arises from a lengthy course of dealing between the branches, evidence of legislative usage may be a more reliable guide to the words Congress chose than dueling dictionary definitions. *See* Abbe R. Gluck & Lisa Schultz Bressman, *Statutory Interpretation from the Inside—An Empirical Study of Congressional Drafting, Delegation, and the Canons: Part I*, 65 Stan. L. Rev. 901, 939 (2013) (Congressional drafters "emphasized the utility

of legislative history far more than dictionaries in resolving statutory ambiguities").

The Senate Report's discussion of § 3348 maps the concept of nondelegable duties onto the phrase "function or duty required to be performed by the applicable officer (and only that officer)," and therefore supports the narrower reading. It shows that the FVRA's remedy applies only to functions and duties the law requires "only that officer" to perform, meaning they are nondelegable to other officers. While the dissent is correct that the term "nondelegable" does not appear in the statute, it appears throughout the Senate Report's discussion of the functions and duties defined in § 3348. This statutory definition of "function or duty" discussed in the report applies equally to all subsections "[i]n this section," 5 U.S.C. § 3348(a), including the ratification bar of § 3348(d)(2).

The report summarizes the "function or duty" definition at issue "as those functions or duties that . . . are established by statute and are required to be performed only by the applicable officer." S. Rep. No. 105-250, at 17. It then discusses this definition in the context of the subsection providing that only the head of the agency in which the vacant office occurs "may perform any function or duty of such office." 5 U.S.C. § 3348(b)(2). The report explains that the "function or duty" defined in § 3348(a) refers to "the non-delegable functions or duties of the officer . . . ." S. Rep. No. 105-250, at 18; *see also id.* ("Delegable functions of the office could still be performed by other officers or employees, but the functions and duties to be performed only by the [Presidentially appointed, Senate confirmed ("PAS")] officer . . . could be performed solely by the head of the executive agency."). According to the Senate Report, therefore, the phrase "functions or duties" of an office means

GONZALES & GONZALES BONDS & INS. AGENCY, INC. V. USDHS  39

nondelegable duties of the office, which the drafters then described as "required . . . to be performed by the applicable officer (and only that officer)." *Id.* at 27 (text of § 3348(a)).

This definition of functions or duties was also consistently used by Senators providing additional or dissenting views. A group of five Senators worried about "an unintended shutdown of the Federal agency within which the vacancy exists due to administrative paralysis," and requested that the legislation clarify "that the non-delegable duties we intend to have performed only by the agency head are only those expressly vested by law or regulation exclusively in the vacant position." *Id.* at 31 (views of Sens. Glenn, Levin, Lieberman, Cleland, & Torricelli). And the minority urged: "It is imperative that the bill unequivocally ensure that the affected functions and duties of the office are only those that are expressly deemed nondelegable by statute or regulation." *Id.* at 36 (minority views of Sens. Durbin & Akaka).[1]

Taken as evidence of linguistic usage, the legislative history of the FVRA shows that the Senators who supported the bill used "and only that officer" to express the

---

[1] The Committee reported the bill by a vote of 9-1, with Senators Cleland, Glenn, Levin, and Lieberman joining the majority in voting Yea. Senator Durbin was the only member voting Nay. S. Rep. No. 105-250, at 11. The Senate failed to invoke cloture on the original version of the Act by a vote of 53-38, with Senators Akaka, Cleland, Durbin, Glenn, Levin, and Lieberman voting Nay after several of them objected to their inability to make amendments unrelated to the nondelegable duty issue. 105 Cong. Rec. 22526 (1998). A month later a Conference Committee reported the Act in an omnibus appropriations bill. H.R. Rep. 108-825, at 633–38 (1998). The House agreed to the conference report by a vote of 333-95, and the Senate agreed to it by a vote of 65-29. 105 Cong. Rec. 22347–48, 27483 (1998).

nondelegable function or duty meaning that we apply today. The Senators who expressed concerns about the FVRA agreed, but worried that the text did not express that reading unambiguously, an observation the dissent and I share.

The plaintiffs and amicus the Center for Constitutional Accountability make general claims about the FVRA's purpose, rooted in part in the Senate Report's summary of the bill, to support their broader reading of § 3348. Yet assertions that the purpose of the FVRA is to limit the President's power under the Appointments Clause do not prove how, exactly, its text does so. Legislative history is most reliable to prove what statutory text may mean, not what the statute should do. The dissent discerns a similar legislative intent in the report's criticism of *Doolin Sec. Sav. Bank, F.S.B. v. Office of Thrift Supervision*, 139 F.3d 203 (D.C. Cir. 1998). But we cannot "give[] authoritative weight to a single passage of legislative history that is in no way anchored in the text of the statute." *Shannon v. United States*, 512 U.S. 573, 583 (1994). Unlike these general discussions of the purposes or other provisions of the FVRA, the Senate Report's section-by-section analysis of the § 3348(a)(2) definition of "function or duty" specifically refers to it as "the non-delegable functions or duties of the officer." S. Rep. No. 105-250, at 18. Nowhere does the Senate Report use the definition of "function or duty" to mean what the plaintiffs, amicus, and dissent interpret it to say: vested by statute in a single officer and not multiple officers.

## III. Legislative and executive practice supports the narrower reading.

A quarter-century of practice under the FVRA by both Congress and the Administration confirms the narrower reading. As James Madison observed: "All new laws, though

penned with the greatest technical skill, and passed on the fullest and most mature deliberation, are considered as more or less obscure and equivocal, until their meaning be liquidated and ascertained by a series of particular discussions and adjudications." *The Federalist* No. 37, at 236 (James Madison) (Jacob E. Cooke ed., 1961). Thus, in separation of powers disputes generally, and appointments disputes specifically, we may look to the "liquidation" of ambiguous terms through government practice. *See NLRB v. Noel Canning*, 573 U.S. 513, 525 (2014); *see also M'Culloch v. Maryland*, 17 U.S. 316, 401 (1819) ("[A] doubtful question" of separation of powers, "if not put at rest by the practice of the government, ought to receive a considerable impression from that practice."); *SEC v. Jarkesy*, 603 U.S. \_\_\_, 2024 WL 3187811, at \*12 n.2 (June 27, 2024) ("Practice may be probative when it reflects the settled institutional understandings of the branches."). We should not overread post-enactment practice to interpret the FVRA when evidence is too sparse to represent the positions of the respective branches. *SW Gen.*, 580 U.S. at 308. But as to the specific definition of "function or duty" in § 3348, both branches have converged on the narrower reading.

Congress charged the Comptroller General of the United States, the head of the Government Accountability Office in the legislative branch, with monitoring executive branch compliance with the FVRA. *See* 5 U.S.C. § 3349; *see Bowsher v. Synar*, 478 U.S. 714, 731–32 (1986) (holding that the Comptroller General is an officer of the legislative branch). That office is thus uniquely situated to interpret the statute. Despite its position in the legislative branch it has given § 3348 the narrower reading. In a legal opinion for Senators, the General Counsel for the Comptroller General explained that the functions and duties set forth in

§ 3348(a)(2) "are described as non-delegable." The Honorable Richard J. Durbin et al., B-310780, 2008 U.S. Comp. Gen. LEXIS 101, at \*7–8 (Comp. Gen. June 13, 2008). "[T]he Vacancies Act['s] focus is on specified duties and functions which under statutory or regulatory language must be performed exclusively by the incumbent of the office," which "requires language that clearly signals duties or functions that cannot be delegated." *Id.* at \*11–12.

Perhaps unsurprisingly, the executive branch agrees with this narrower reading. Still, it has taken the position deliberately and consistently. Shortly after the FVRA's enactment, the Department of Justice issued an opinion explaining that "a 'function or duty' is defined as any function or duty of the PAS office that is required by statute or regulation to be performed exclusively by the holder of that office." Guidance on Application of Fed. Vacancies Reform Act of 1998, 23 Op. O.L.C. 60, 70–71 (1999) (citing 5 U.S.C. § 3348(a)(2)). Thus, "the Act permits non-exclusive responsibilities to be delegated to other appropriate officers and employees in the agency." *Id.* at 72. The Department has maintained that view. *See, e.g.*, Fed. Vacancies Reform Act's Application to a Vacancy for Which Prior Presidents Submitted Multiple Nominations, 46 Op. O.L.C. __, 2022 WL 16694120, at \*6 (O.L.C. Oct. 21, 2022); Under Sec'y of the Treasury for Enf't, 26 Op. O.L.C. 230, 233–34 (2002).

We have refused to give formal deference to agency interpretations of the FVRA, *Hooks v. Kitsap Tenant Support Servs.*, 816 F.3d 550, 564 (9th Cir. 2016), and no party suggests a deference canon applies here. Still, the legislative and executive branches' thorough, reasoned, and consistent guidance on this question provides additional persuasive evidence of the statute's probable, if not plain,

meaning. *See Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944); *Loper Bright Enters. v. Raimondo*, 603 U.S. \_\_\_, 2024 WL 3208360, at \*13 (June 28, 2024) (contemporaneous and consistent executive branch interpretations "may be especially useful in determining the statute's meaning"). The FVRA arose from disagreements between our co-equal branches about the scope of the President's power to fill vacancies without the Senate's advice and consent. So it is significant that, here, agencies in each branch agree upon the same, narrower reading of § 3348. The dissent's broader reading would unsettle this mutual understanding.

\* \* \*

A leading commentator observes, "[f]or all the detail given to permissible types of acting officials, their tenures, and the severe consequences of violations, the Vacancies Act now appears to provide an easy workaround in many cases: delegate the tasks of the vacant office." Anne Joseph O'Connell, *Actings*, 120 Colum. L. Rev. 613, 633 (2020). "[T]hese delegation practices are pervasive." *Id.* at 633 n.105. The dissent is correct that under our reading the FVRA's voidness and ratification provision does not apply to "the vast majority of actions taken by officials serving in violation of the act." But it is not our reading of the FVRA itself that does that limiting work.

We have recognized that Congress can authorize delegations implicitly: "as far as delegation to subordinates is concerned, '[e]xpress statutory authority for delegation is not required.'" *Frankl v. HTH Corp.*, 650 F.3d 1334, 1350 (9th Cir. 2011) (alteration in original) (quoting *Loma Linda Univ. v. Schweiker*, 705 F.2d 1123, 1128 (9th Cir.1983)); *see also U.S. Telecom Ass'n v. FCC*, 359 F.3d 554, 565 (D.C.

Cir. 2004) ("When a statute delegates authority to a federal officer or agency, subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent."); *cf. Assiniboine & Sioux Tribes v. Bd. of Oil & Gas Conservation*, 792 F.2d 782, 795 (9th Cir. 1986) ("Without express congressional authorization for a subdelegation, we must look to the purpose of the statute to set its parameters."). The plaintiffs do not meaningfully challenge the delegability of the duties here. *See* 8 U.S.C. § 1103(a)(3) (vesting forms of bond in the Secretary); 6 U.S.C. § 112(b)(1) (authorizing delegation of "any of the Secretary's functions"). Nor do they question the broader doctrine of implied delegation. And practically speaking, it is this presumption that duties are delegable that narrows the scope of the FVRA's statutory remedy.

The cumulative evidence of the text, structure, history, and practice of the FVRA establishes that the "function or duty" definition of § 3348(a)(2) applies only to the nondelegable functions or duties of the applicable office. Therefore, § 3348(d)(2) did not prohibit ratification of the surety bonds rule.

GONZALES & GONZALES BONDS & INS. AGENCY, INC. V. USDHS 45

Christen, J., dissenting:

This case requires us to decide when consequences result for violations of the Federal Vacancies Reform Act of 1998 (FVRA), the statute that limits the time temporary officials may serve in Executive Branch positions that require presidential appointment and Senate confirmation.

Congress crafted a stiff enforcement mechanism for violations of the FVRA: actions taken by officials serving in violation of the Act have no force or effect, and the Act bars later ratification of those actions. *See* 5 U.S.C. § 3348(d)(1)–(2). Unfortunately, today's decision renders the FVRA a near-dead letter because the court decides that the FVRA does not apply to the vast majority of actions taken by officials serving in violation of the Act. The majority reaches this conclusion by reasoning that the FVRA's integrated scheme applies only to those functions and duties that Congress expressly forbids an officer from delegating to a subordinate. In my view, this conclusion is inconsistent with the text, structure, and purpose of the FVRA, all of which make clear that the Act applies to functions and duties that Congress requires a single officer to perform and excludes functions and duties that Congress authorizes more than one officer to perform.

Turning to the subject appeal, I agree with the majority that Chad Wolf was not lawfully serving as Acting Secretary of the Department of Homeland Security (DHS) when he promulgated the surety bonds rule at the heart of the parties' dispute. But I respectfully dissent from the majority's decision to reverse the judgment of the district court because I conclude that the FVRA's ratification bar prevented Wolf's successor from ratifying the rule Wolf adopted.

I

The Constitution vests the President with the power and duty to nominate officers of the United States, subject to the advice and consent of the Senate. U.S. Const. art. II, § 2, cl. 2. An officer of the United States is an official who "exercis[es] significant authority pursuant to the laws of the United States." *Freytag v. Comm'r*, 501 U.S. 868, 881 (1991) (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976)). Vacancies in Executive offices arise frequently, and the nomination and confirmation of a successor is rarely a swift process. As a practical—and often politically expedient—workaround, the Executive Branch frequently turns to the use of temporary, or "acting," officers to fill vacant positions. The Legislative Branch has allowed this practice, but it has also placed limits on it to ensure that reliance on temporary officers does not usurp the Senate's advice-and-consent role. *See NLRB v. SW Gen., Inc.*, 580 U.S. 288, 294–95 (2017).

The FVRA is Congress's latest attempt to reign in the Executive Branch's use of acting officers. The FVRA's predecessor, the Vacancies Act, dated to 1868. *See* Act of July 23, 1868, ch. 227, 15 Stat. 168. The Vacancies Act initially allowed temporary officers to serve for just 10 days in most circumstances, a grace period that was later lengthened to 30 days and then 120 days. *SW Gen.*, 580 U.S. at 294–95. The Vacancies Act did not impose any consequences for the Executive Branch failing to comply with these limits, however. *See* 15 Stat. 168. For more than a century, the Vacancies Act was understood to be the sole means of temporarily filling vacancies in Executive offices. *See* Morton Rosenberg, Cong. Rsch. Serv., RL 98-892, *The New Vacancies Act: Congress Acts to Protect the Senate's Confirmation Prerogative* 2 (1998) (Rosenberg).

GONZALES & GONZALES BONDS & INS. AGENCY, INC. V. USDHS 47

In 1973, the Department of Justice took the position that the Vacancies Act was just *one way* of filling vacancies. *Id.* at 2–3; *see also SW Gen.*, 580 U.S. at 294. A second way, according to DOJ, was for an agency head to delegate all her functions and duties to a subordinate officer or agency employee before leaving office, pursuant to the agency's vesting-and-delegation statute. Rosenberg at 2–3. Vesting-and-delegation statutes are general provisions that vest all functions of an agency in the agency head and allow delegation of those functions to subordinates. For example, DHS's vesting-and-delegation statute provides that "[a]ll functions of all officers, employees, and organizational units of the Department are vested in the Secretary" and the Secretary "may delegate any of the Secretary's functions to any officer, employee, or organizational unit of the Department." 6 U.S.C. § 112(a)(3), (b)(1). Taken to the extreme, DOJ's position could allow an office subject to Senate confirmation to go unfilled indefinitely while a subordinate officer or agency employee performs the duties of the vacant office.

As the Supreme Court explained in *SW General*, the "interbranch conflict . . . over the Vacancies Act" came to a head in the late-1990s. 580 U.S. at 294–95. In 1998, about 20% of Executive offices requiring Senate confirmation were filled by acting officials, "most of whom had served beyond the 120–day limitation period" in the Vacancies Act. *Id.* at 295 (quoting Rosenberg at 1). "Perceiving a threat to the Senate's advice and consent power, Congress . . . replaced the Vacancies Act with the FVRA." *Id.* (citing Rosenberg at 6).

The FVRA spans 5 U.S.C. §§ 3345 to 3349. Section 3345 identifies who may serve in an acting capacity when a Senate-confirmed member of the Executive Branch dies,

resigns, or is otherwise unable to perform her duties. Pursuant to the Act, the default replacement is the officer's first assistant, who "shall perform the functions and duties of the office" in an acting capacity. 5 U.S.C § 3345(a)(1). Alternatively, Congress provided that the President may direct another Senate-confirmed officer, or an officer or employee who has served in their position for at least 90 days during the year preceding the vacancy and has a rate of pay of at least GS-15, to perform the functions and duties of the vacant office in an acting capacity. *Id.* § 3345(a)(2)–(3). Section 3346 limits the period an acting officer appointed pursuant to § 3345 may serve to 210 days from the date of the vacancy. *Id.* § 3346(a)(1). The 210-day period restarts if the Senate rejects a nominee. *Id.* § 3346(b)(1).

Section 3347(a) confirms that §§ 3345 and 3346 "are the exclusive means" for the appointment of officers to temporarily fill positions that require Senate confirmation, unless Congress expressly enacts an alternative order of succession for a given office *or* expressly gives the President, a court, or a department head the power to designate a different order of succession. *Id.* § 3347(a)–(a)(1). Of critical importance to this appeal, § 3347(b) states that the alternative order of succession referred to in § 3347(a)(1) does not include general vesting-and-delegation statutes. *Id.* § 3347(b) ("Any statutory provision providing *general* authority to the head of an Executive agency . . . to delegate duties statutorily vested in that agency head to, or to reassign duties among, officers or employees of such Executive agency, *is not a statutory provision to which [§ 3347(a)(1)] applies*." (emphasis added)). In other words, the FVRA explicitly rejected the workaround position DOJ took starting in 1973 that vesting-and-

delegation statutes offer another way for a subordinate to perform the duties of an agency head.

Unlike the Vacancies Act, § 3348 of the FVRA sets out two consequences for the Executive Branch's failure to comply with §§ 3345, 3346, and 3347. When an officer serves without valid acting authority, or continues to serve beyond the time in which she has valid acting authority, § 3348(d) unequivocally requires that any action taken by that officer *in the performance of any function or duty of that office* "shall have no force or effect." *Id.* § 3348(d)(1). Second, the Act states that an action that has no force or effect under § 3348(d)(1) "may not be ratified." *Id.* § 3348(d)(2).

Section 3348(a) goes on to define the functions and duties that are subject to the ratification bar:

> (2) the term "function or duty" means any function or duty of the applicable office that—
>     (A)(i) is established by statute; and
>         (ii) is required by statute to be performed by the applicable officer (and only that officer);
>         . . . .

*Id.* § 3348(a).[1] Finally, § 3349 requires the head of each Executive agency to report to the Comptroller General and to Congress all vacancies, acting officers, and nominees. *Id.* § 3349(a).

---

[1] I focus primarily on the ratification bar at § 3348(d)(2) because that is the dispositive provision in this case. However, the majority's interpretation of "function or duty" equally limits § 3348(d)(1)'s requirement that actions taken in violation of the FVRA have "no force or effect," *i.e.*, they "are void *ab initio*." *SW Gen.*, 580 U.S. at 298 n.2.

At issue in this case is a rule regulating immigration surety bonds promulgated in 2020 by then-Acting DHS Secretary Chad Wolf. In 2021, Wolf's successor, Senate-confirmed DHS Secretary Alejandro Mayorkas, issued a directive purporting to ratify the surety bonds rule. I agree with the majority that Wolf was not properly appointed as Acting DHS Secretary when he issued the surety bonds rule. The dispositive question is whether the FVRA's ratification bar rendered Mayorkas's ratification of the rule ineffective. The answer to that question turns on whether issuing rules for surety bonds is a "function or duty" of the DHS Secretary within the meaning of § 3348(a)(2) of the FVRA.

Congress directed the DHS Secretary to promulgate bond rules. *See* 8 U.S.C. § 1103(a)(1), (3) ("The Secretary of Homeland Security . . . shall establish such regulations; prescribe such forms of bond, reports, entries, and other paper; issue such instructions; and perform such other acts as he deems necessary for carrying out his authority . . . ."). Congress did not direct any other officer to perform this duty. Because this duty was one that Congress required only the DHS Secretary to perform, the 2020 surety bonds rule was without force or effect and could not be ratified. The majority nevertheless concludes that Secretary Mayorkas successfully ratified the rule, reasoning that the duty to promulgate surety bonds rules was not a "function or duty" of the DHS Secretary because the Secretary was free to delegate virtually all his duties to subordinates.

II

My colleagues adopt a definition of "function or duty" that turns what the Supreme Court has described as the Act's "general rule" into an exception. *SW Gen.*, 580 U.S. at 298 n.2. In my view, the majority's conclusion cannot be

GONZALES & GONZALES BONDS & INS. AGENCY, INC. V. USDHS 51

squared with the plainest reading of the statutory text, the statutory design, or the Act's purpose. I would hold that the FVRA bars ratification of actions taken by improperly serving acting officials in the performance of functions or duties that Congress required to be performed by that officer and not by more than one officer.

A

As a majority of this panel recognizes, the FVRA's definition of "function or duty" is susceptible to at least two permissible readings. The statute provides that functions and duties of officers requiring Senate confirmation are those that are "required by statute to be performed by the applicable officer (and only that officer)." § 3348(a)(2)(A)(ii). The plainest reading of this text is that where Congress directs an officer to perform a duty, and does not also direct one or more other officers to perform it, Congress has required that officer—and only that officer— to perform the duty. *See Require*, Black's Law Dictionary (6th ed. 1990) (defining "[r]equire" as "[t]o direct, order, demand, instruct, command, claim, compel, request, need, exact"). Several federal district courts have adopted this reading. *See, e.g.*, *Behring Reg'l Ctr. LLC v. Wolf*, 544 F. Supp. 3d 937, 948 (N.D. Cal. 2021); *Asylumworks v. Mayorkas*, 590 F. Supp. 3d 11, 25 (D.D.C. 2022).

Under this interpretation of the Act, the parenthetical "(and only that officer)" excludes instances in which Congress has directed more than one officer to perform a function or duty. For example, 18 U.S.C. § 2332(d) provides that "[n]o prosecution for [certain crimes against U.S. nationals that occur outside the U.S.] shall be undertaken by the United States except on written certification of the Attorney General or the highest ranking subordinate of the

Attorney General with responsibility for criminal prosecutions" that the prosecution meets certain requirements. Because this statute directs either the Attorney General *or* her highest-ranking subordinate to authorize certain prosecutions, this duty is not required to be performed by the Attorney General and only the Attorney General, and it is therefore not a "function or duty" within the meaning of the FVRA.

Another plausible reading of the "function or duty" provision, at least when the text is considered in isolation, is the one adopted by the majority and two of our sister circuits. *See Arthrex, Inc. v. Smith & Nephew, Inc.*, 35 F.4th 1328, 1336–38 (Fed. Cir. 2022); *Kajmowicz v. Whitaker*, 42 F.4th 138, 148 (3d Cir. 2022). Under this interpretation, the parenthetical "(and only that officer)" implicitly excludes statutory functions and duties that an officer is permitted to delegate to a subordinate, because if a duty is delegable, the statute does not require *only* that officer to perform it. To appreciate the breadth of the hole this interpretation blasts through the FVRA, it is important to understand that there are several ways for Executive officers to delegate their statutory duties to subordinates.

First, a specific duty may be made expressly delegable by statute. Alternatively, general vesting-and-delegation statutes allow agency heads to delegate any of their duties, so long as another statutory provision does not forbid them from doing so. Finally, we have recognized a "general presumption that delegations to subordinates are permissible in cases of statutory silence." *Frankl v. HTH Corp.*, 650 F.3d 1334, 1350 (9th Cir. 2011). Because there are several ways for duties to be delegable, my colleagues' read of the FVRA—as barring ratification of actions taken in the performance of functions or duties only where Congress has

GONZALES & GONZALES BONDS & INS. AGENCY, INC. V. USDHS 53

expressly forbidden delegation—excludes nearly every statutory function or duty in the United States Code. This interpretation is strained, but I agree that if we were limited to consulting the text of § 3348(a)(2) alone, the statutory language could conceivably sustain it. The problem is that the structure and purpose of the FVRA confirm that the majority's interpretation is an inferior reading of the text.

The author of the majority reads the text of § 3348(a)(2) in isolation and concludes that it unambiguously refers to functions or duties that are expressly nondelegable. But for the reasons explained, the provision is susceptible to more than one reading even when divorced from the statutory context.[2] The majority author's conclusion also does not account for the bedrock principle that the "plainness or ambiguity" of a provision must be "determined by reference to the language itself, the specific context in which the language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997).

B

Because the meaning of "function or duty" is "ambiguous, we must turn to the broader structure of the Act to determine the [provision's] meaning." *King v. Burwell*, 576 U.S. 473, 492 (2015). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (internal quotation marks and citation omitted).

---

[2] The third member of our panel agrees that § 3348(a)(2) is ambiguous.

The FVRA's provisions work together to restrict the Executive Branch's discretion to allow officials to serve in Senate-confirmed positions without actually receiving Senate confirmation. The Act allows limited use of acting officers, but the consequences Congress imposed for violating the FVRA incentivize the nomination of permanent officials who are subjected to the Senate confirmation process. Three separate aspects of the FVRA's statutory design support the conclusion that "function or duty" of a vacant office refers to duties that Congress directs a single officer to perform, and excludes duties that Congress directs more than one officer to perform. Of the permissible readings of "function or duty" in § 3348(a)(2), only this one "produces a substantive effect that is compatible with the rest of the law." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988).

1

First, Congress's inclusion of § 3347(b) strongly favors reading § 3348(d)(2)'s ratification bar to apply to all functions and duties that Congress has assigned to a single officer, without regard to whether a duty is delegable. In § 3347(b), Congress acknowledged general vesting-and-delegation statutes and expressly rejected the practice of relying on them to bypass the FVRA's rules of succession. Section 3348(d) ensures that there are consequences if the rules of succession are not followed. Sections 3347(b) and 3348(d) therefore work in tandem to cabin the discretion of the Executive Branch to use acting officers.

My colleagues conclude that § 3347(b) "does not impact the meaning of 'function or duty' in § 3348." I disagree. Both sections are necessary parts of the exclusive scheme Congress adopted for the Executive Branch to temporarily

fill vacancies. In § 3347(b), Congress took the unusual step of anticipating that the Executive Branch might invoke general delegation authority as a loophole to circumvent the Act's rules of succession, and expressly foreclosed the Executive Branch from doing so. The majority nevertheless concludes the very same general delegation authority enables the Executive Branch to avoid the Act's consequences. Rather than working in tandem, the majority's interpretation places §§ 3347(b) and 3348(d) at odds.

2

Context provides a second clue as to which reading of "function or duty" is most consistent with the FVRA's statutory design. The majority holds that Congress defined "function or duty" to include only those duties that are made expressly nondelegable by statute, even though the terms "delegate" or "nondelegable" do not appear anywhere in the definition of "function or duty." Such a glaring omission is cause enough to second-guess the majority's conclusion. But the significance of the omission of "nondelegable" from § 3348(a)(2) is magnified by the FVRA's use of the word "delegate" in the immediately preceding subsection, § 3347(b), because we must give meaning to the variation in word choice between the two provisions. If a statute "has used one term in one place, and a materially different term in another, the presumption is that the different term denotes a different idea." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 457–58 (2022) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012)).

In § 3347(b), Congress explicitly used the word "delegate"; accordingly, we presume that the words in § 3348(a)(2)(A)(ii)—that a function or duty is one "required

by statute to be performed by the applicable officer (and only that officer)"—do *not* mean that the functions and duties that may not be ratified are limited to those that Congress has affirmatively deemed nondelegable. Congress's use of "delegate" in § 3347(b) "shows that when Congress intended to" refer to delegable duties, "it knew how to do so." *Custis v. United States*, 511 U.S. 485, 492 (1994). The majority's failure to account for the variation between §§ 3347(b) and 3348(a)(2) further confirms that it adopts a strained reading of the statutory text.

3

A third rule that counsels against my colleagues' interpretation is that we must not adopt a reading that renders an ambiguous provision "almost a nullity." *Hernandez v. Williams, Zinman & Parham PC*, 829 F.3d 1068, 1077 (9th Cir. 2016); *see also Henderson v. United States*, 568 U.S. 266, 281 (2013) (Scalia, J., dissenting) ("A rudimentary principle of textual interpretation . . . is that if one interpretation of an ambiguous provision causes it to serve a purpose consistent with the entire text, and the other interpretation renders it pointless, the former prevails."). The majority recognizes that its conclusion "limit[s] the scope" of the ratification bar. But this concession buries the lede. The majority actually renders the ratification bar all but inoperative by making it applicable only to a "vanishingly small" number of functions and duties. *Arthrex*, 35 F.4th at 1337 (citation omitted).

Undeterred, the majority insists it "does not leave the FVRA toothless" because actions not subject to the ratification bar under the majority's interpretation of "function or duty" "can still be found without legal force based on other provisions of the FVRA" and "remain

voidable on other grounds." But the majority fails to identify what other statutory basis exists in the FVRA that allows courts to find actions "voidable." The cases the majority cites do not support its position because each of them expressly states that whether the agency's action was voidable was not at issue. *See SW Gen.*, 580 U.S. at 298 n.2 (declining to reach whether NLRB action was voidable under the FVRA because the NLRB "did not seek certiorari on this issue"); *SW Gen., Inc. v. NLRB*, 796 F.3d 67, 79 (D.C. Cir. 2015) (assuming without deciding that NLRB action was voidable under the FVRA), *aff'd*, 580 U.S. 288 (2017); *Hooks v. Kitsap Tenant Support Servs., Inc.*, 816 F.3d 550, 564 (9th Cir. 2016) (deeming NLRB action voidable under the FVRA because the NLRB did not contest that remedy).[3]

My colleagues speculate that their interpretation of "function or duty" might not wind up frustrating the FVRA's remedial scheme because, depending on the circumstances, the Administrative Procedure Act might invalidate agency actions taken by improperly serving officers. This sidesteps our task, which is to interpret the statute before us and to adopt a permissible reading that allows it to be understood as a harmonious whole. Whether other statutes may provide means of redress says nothing about the correct interpretation of the FVRA.

The concurrence relies on legislative history contained in a Senate committee report addressing a prior version of the bill that became the FVRA, and concludes that the report supports the majority's reading of "function or duty." *See* S.

---

[3] These courts did not consider the meaning of the ratification bar because the General Counsel of the NLRB is one of several offices the FVRA exempts from the penalty provisions of § 3348(d). *See* § 3348(e)(1).

58 GONZALES & GONZALES BONDS & INS. AGENCY, INC. V. USDHS

Rep. No. 105-250 (1998). Although the Senate report refers to nondelegable functions and duties, it does so in reference to a different subsection of the bill, § 3348(b), that addresses a scenario not raised by the present case.[4] *See id.* at 17–18.

The reference the concurrence calls out demonstrates that Congress knew precisely how to refer to nondelegable duties, and yet it did not use those words in the text § 3348(a)(2). When the Federal Circuit considered the meaning of "function or duty" in the FVRA, it noted the same language in the Senate report. *See Arthrex*, 35 F.4th at 1336–37. Far from conclusive, the Federal Circuit found that the references to nondelegable duties in the Senate

---

[4] Section 3348(b) requires that a Senate-confirmed agency head take on all functions and duties of a vacant subordinate office unless an acting officer fills the vacant subordinate office pursuant to the FVRA's succession rules. 5 U.S.C. § 3348(b). The Senate report contemplates, however, that the functions and duties the agency head must perform are limited to "the non-delegable functions or duties of the [subordinate] officer." S. Rep. No. 105-250, at 18. The report reflects the concerns of committee members who worried that "administrative paralysis" would result if an agency head were forced to perform the numerous delegable functions and duties of vacant subordinate offices. S. Rep. No. 105-250, at 31. When addressing the duties subject to the ratification bar, the Senate report makes clear that the committee was treating the situation in the present case—where *the agency head* lacks valid acting authority—differently from a situation where a subordinate officer lacks valid acting authority pursuant to § 3348(b). The Senate report states that when one who, "not being the agency head" "perform[s] nondelegable duties of" a subordinate office—in violation of § 3348(b)—the ratification bar applies. *Id.* at 19. But it also provides, without limitation, that "the successor in the office by virtue of his appointment by the President by and with the advice and the consent of the Senate may not ratify the actions of a person who filled the office in violation of the legislation's provisions." *Id.*

report merely revealed the "competing narratives in the legislative history." *Id.* at 1337.

The concurrence nevertheless sees unequivocal support for the majority's interpretation in the Senate report, overlooking that the report leaves no doubt that the Senate committee's unambiguous aim was to avoid the very result that the majority urges here. Specifically, the report explains that the FVRA was intended "[t]o ensure an effective enforcement mechanism and to overturn the recent decision of the United States Court of Appeals for the District of Columbia Circuit in *Doolin Security Savings Bank v. Office of Thrift Supervision*, 139 F.3d 203 (D.C. Cir. 1998)." S. Rep. No. 105-250, at 11. In *Doolin*, the D.C. Circuit addressed a challenge to an order issued by the now-defunct Office of Thrift Supervision (OTS). 139 F.3d at 204. An acting director of OTS initiated administrative enforcement proceedings against a bank and resigned two and a half years later, before adopting an administrative law judge's recommended decision. *Id.* The President invoked the Vacancies Act to name a new acting director, and that director issued a final opinion and cease and desist order against the bank. *Id.* The bank appealed and argued that the cease and desist order was void because the first acting director—who initiated the enforcement action—was not appointed pursuant to the Vacancies Act and because the second acting director—who signed the final order—was appointed after the President's authority under the Vacancies Act had expired. *Id.* at 207, 211. The D.C. Circuit held that the second acting director was validly appointed pursuant to the Vacancies Act. *Id.* at 211. The court further held that any violation of the Vacancies Act with respect to the first acting director was harmless because the second acting director ratified his predecessor's initiation of the

Case: 22-16552, 07/18/2024, ID: 12897615, DktEntry: 47-1, Page 60 of 64

enforcement action when he issued the final cease and desist order. *Id.* at 211, 214.

The Senate report makes plain the committee's reaction to *Doolin*'s ratification holding: "if any subsequent acting official or anyone else can ratify the actions of a person who served beyond the length of time provided by the Vacancies Act, then no consequence will derive from an illegal acting designation." S. Rep. No. 105-250, at 8. The Senate report explains that the committee included the ratification bar in the FVRA because it was "concerned that the ratification approach taken by the court in *Doolin* would render enforcement of the [FVRA] a nullity in many instances." *Id.* at 20. Thus, if the legislative history in the Senate report is considered, it does not support the majority's conclusion that the Act permits end runs around the ratification bar. To the contrary, because the function at issue in *Doolin* was one the OTS director could have delegated to a subordinate, the committee's intent to overrule *Doolin* makes clear that it could not have intended the ratification bar to be limited to only those actions taken in the performance of nondelegable duties.[5]

---

[5] OTS's authorizing statutes vested in the director the "power to enforce" the agency's statutes and regulations, 12 U.S.C. § 1464(d)(1)(A) (1994), and to "issue such orders" as necessary, 12 U.S.C. § 1462a(b)(2) (1994). Just as with DHS in this case, Congress permitted the OTS director to "delegate to any employee, representative, or agent any" of the director's powers. *Id.* § 1462a(h)(4)(A)(ii). Indeed, the first acting director obtained his purported authority when the outgoing director "delegated to him 'all the powers of the Director'" pursuant to § 1462a(h)(4)(A)(ii). *Doolin*, 139 F.3d at 211. Thus, the acting director who initiated the enforcement action in *Doolin* was exercising a delegable function. Yet, under the majority's view, the FVRA's ratification bar still would not prevent ratification of that acting director's actions.

GONZALES & GONZALES BONDS & INS. AGENCY, INC. V. USDHS 61

Our analysis should be grounded in the Act's text and structure. The permissible reading of "function or duty" that allows the FVRA's provisions to work together is also the plainest reading of the words Congress used: when officials improperly serve in positions that require presidential appointment and Senate confirmation, the FVRA bars ratification of actions those officials take in performing any function or duty that Congress required a single officer to perform.

C

This reading of the ratification bar is further confirmed by "the context in which [the FVRA] was enacted and the purposes it was designed to accomplish." *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 377 (2004) (turning to context and purpose after deeming statutory text ambiguous). As the Supreme Court has explained, the FVRA was Congress's response to the Executive Branch allowing acting officers to serve well past the deadlines in the Vacancies Act and using vesting-and-delegation statutes to entirely circumvent the Vacancies Act's grace period. *See SW Gen.*, 580 U.S. at 294–95; *see also* Rosenberg at 1–3. Indeed, the Vacancies Act lacked any enforcement mechanism, *see* 15 Stat. 168, and the remedial provision in § 3348(d) was the key innovation of the FVRA.

With this context, the clear purpose of the FVRA is to allow for the limited use of acting officers while strengthening protection of the Senate's advice-and-consent role, in part by encouraging the advancement of nominees by adding consequences for the Executive Branch's noncompliance. *See SW Gen.*, 580 U.S. at 295–96. To further this purpose, the ratification bar must extend to the duties Congress grants to a single officer—and not to those

functions and duties granted to multiple officers. The majority's limitation of the ratification bar to only those duties that Congress expressly deems nondelegable guts the FVRA. *See N.Y. State Dep't of Soc. Servs. v. Dublino*, 413 U.S. 405, 419–20 (1973) ("We cannot interpret federal statutes to negate their own stated purposes.").

At least some agencies have applied the majority's interpretation of the FVRA to continue operating as if the statute had never been enacted. For example, when there have been vacancies in both the Director and Deputy Director positions in the United States Patent and Trademark Office (USPTO), the agency has used the Commissioner of Patents to perform the duties of the Director and explained that the Commissioner "has not been, and need not be, appointed 'Acting Director' of the USPTO under the [FVRA]."**[6]** Though Congress required only the Director to perform these duties, *see, e.g.*, 35 U.S.C. § 3(a)(2)(A), the USPTO asserted that it need not comply with the FVRA because compliance with the Act "is only needed" when there are duties "that are exclusive to that particular [Senate-confirmed] Officer" and "[a]ll of the Director['s] duties . . . are delegable (i.e., non-exclusive) duties."**[7]** Other agencies have adopted a similar practice. *See, e.g.*, *Bullock v. U.S. Bureau of Land Mgmt.*, 489 F. Supp. 3d 1112, 1128–29 (D. Mont. 2020) (finding that a deputy director of the Bureau of Land Management violated the FVRA when he used general

---

[6] *See Notice of Delegation of Functions and Duties at the USPTO*, U.S. Pat. & Trademark Off. (Nov. 22, 2013), www.uspto.gov/trademarks/trademark-updates-and-announcements/notice-delegation-functions-and-duties-uspto [https://perma.cc/77BE-CS8J] (USPTO Notice).

[7] *See* USPTO Notice.

delegation authority to perform the duties of the vacant Director's office). This is the precise end-run that § 3347(b) was enacted to prevent.**[8]**

I recognize that the ratification bar is a harsh consequence and that the interpretation I advance has the potential to imperil many agency actions if an official has served in violation of the Act. I also recognize that the lengthy confirmation process, and the large number of Executive positions requiring Senate confirmation, necessitates reliance on acting officers to keep the wheels of our federal government turning. But the ratification bar only kicks in if an agency does not follow the FVRA's chain of succession or if an acting officer serves for longer than 210 days. The Act also accounts for the uncertainties of the confirmation process: if an initial nominee is rejected or returned by the Senate, or withdraws from consideration, the 210-day limit starts anew. *See* § 3346(b)(1). Once a second nominee is submitted to the Senate, the acting officer may continue to serve until the nominee is confirmed or for 210 days after the second nominee is rejected, returned, or withdrawn. § 3346(b)(2). The FVRA's design thus prevents the President from simply failing to nominate a permanent officer for the Senate's consideration. There have been a

---

[8] The concurrence notes that Professor Anne Joseph O'Connell has written that broad delegations of authority "appear[] to provide an easy workaround" to the FVRA. Anne Joseph O'Connell, *Actings*, 120 Colum. L. Rev. 613, 633 (2020). But Professor O'Connell explained that she only "treats [agencies' delegation practices] as permissible (though not necessarily desirable) under the" FVRA because they "are pervasive and have largely been upheld by the limited courts to consider them." *Id.* at 633 n.105. Professor O'Connell's careful observation about Executive Branch practice and the nascent state of the relevant caselaw did not endorse of agencies' circumvention of the FVRA nor analyze the Act's definition of "function or duty."

64 GONZALES & GONZALES BONDS & INS. AGENCY, INC. V. USDHS

few notable exceptions, but officials serving in violation of the Act have not been common.

### D

With the meaning of "function or duty" in hand, the outcome of this appeal is straightforward. Chad Wolf was without authority to issue the surety bonds rule because he was not properly acting as DHS Secretary under the FVRA. Congress directed only the DHS Secretary to promulgate surety bond rules. *See* 8 U.S.C. § 1103(a)(3). The issuance of surety bonds rules is a "function or duty" of the DHS Secretary within the meaning of § 3348(a)(2), so it follows under § 3348(d) that Wolf's promulgation of the surety bonds rule was without force or effect and could not be ratified by Wolf's successor.

### III

I would affirm the district court's order granting Plaintiff-Appellees' motion for summary judgment. Accordingly, I respectfully dissent.